## GUARANTY MORTGAGE CO. v. FLINT.

No. 4205.    Decided September 12, 1925.    (240 P. 175.)

1.  APPEAL AND ERROR—WHETHER COURT ERRED IN STRIKING ALLEGATIONS FROM COUNTERCLAIM HELD IMMATERIAL.  Whether court erred in striking from counterclaim allegations of false representations in procuring notes sued on, need not be considered, in view of judgment required by remaining allegations and admissions in reply.

2.  APPEAL AND ERROR—WHETHER DEFENDANT WAS ESTOPPED TO SET UP FRAUDULENT REPRESENTATIONS AND HAD RIGHT TO AND DID RELY THEREON NOT CONSIDERED, WHERE COURT FOUND THAT

Appeal from Second District

HE WAS NOT DAMAGED THEREBY. Whether defendant would be estopped from setting up fraudulent representations as defense to action on notes for corporate stock by knowledge acquired in attending stockholder's meetings, payments on notes and receipt of dividends on stock, and had right to and did rely on such representations, need not be determined on appeal, where court found on sufficient evidence that the defendant was not damaged by such representations.

3. PLEADING—NATURE OF PROCEEDINGS DETERMINED BY PLEADINGS. Whether proceeding in law action or suit in equity must be determined by pleadings.

4. ACTION—ACTION ON NOTES, IN WHICH DEFENDANT ASKED DAMAGES IN ANSWER AND COUNTERCLAIM FOR FALSE REPRESENTATIONS, HELD LAW ACTION. Action for personal judgment on notes, given for corporate stock, in which defendant relied on false representations as defense, did not ask for rescission of contract or cancellation of notes, and asked judgment for damages in answer and counterclaim, *held* a law action.

5. FRAUD—EQUITABLE THEORY OF FRAUD MORE COMPREHENSIVE THAN THAT OF LAW. Whatever amounts to fraud in law is fraud in equity, but converse is not true; equitable theory of fraud being much more comprehensive.

6. FRAUD—PROOF OF DAMAGES NECESSARY. To constitute actionable fraud and deceit, there must be allegation and supporting proof of damages.[1]

7. FRAUD—RIGHT TO RELY ON FRAUDULENT REPRESENTATION DOES NOT RELIEVE PARTY COMPLAINING OF SHOWING DAMAGES SUSTAINED. General rule, that subscriber for corporate stock may rely on positive representation as to material fact, made to induce him to subscribe and with intent that he shall rely thereon by one who can be supposed to have knowledge of fact, and is not bound to make independent inquiry or investigation as to its truth or falsity, does not relieve him of necessity of showing damages sustained by acting on representations made.

8 CORPORATIONS—CANNOT MAKE VALID CONTRACT TO PAY DIVIDENDS ON PREFERRED STOCK, UNLESS PROFITS AUTHORIZE PAYMENT. Corporation cannot make valid contract binding on it to pay dividends on preferred stock, unless profits of business authorized payment of dividends provided for in certificate of stock. STRAUP, J., dissenting.

[1] *Stuck* v. *Delta L. & W. Co.*, 63 Utah, 495, 227 P. 791.

Appeal from District Court, Second District, Weber County; *J. N. Kimball,* Judge.

Action by the Guaranty Mortgage Company against John Flint. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*J. D. Skeen,* of Salt Lake City, for appellant.

*Pratt & Pratt,* of Ogden, for respondent.

GIDEON, C. J.

The complaint contains three causes of action. Each separate cause of action is upon a note given to respondent corporation for the purchase of shares of stock in the corporation. The answer admits the execution of the notes, but alleges as a defense certain false representations made by respondent or its agents in procuring the notes. Appellant also counterclaims and seeks damages by reason of the alleged false representations.

The case was tried to the court. Findings of fact and conclusions of law were made. Judgment was entered in favor of respondent for the full amount sought to be recovered. From that judgment this appeal is prosecuted.

In the answer and counterclaim, appellant sets out numerous alleged false statements and bases his defense and his right to an affirmative judgment under the counterclaim upon these alleged false representations. On the filing of the answer and counterclaim, respondent moved to strike from the counterclaim certain allegations of fraudulent representations, on the ground "that said allegations are redundant and mere surplusage." The court granted this motion in part and denied it in part. The ruling of the court in granting the motion in part is assigned as error.

The claim of false representations relied upon as a basis for defeating the judgment upon appellant's promissory notes, and as entitling the appellant to a judgment upon his

counterclaim, are set out at some length in the counterclaim and appear as subparagraphs of paragraph 2, and are designated by the letters of the alphabet beginning with a and concluding with k. These allegations may be summarized as follows: (a) That the plaintiff corporation was organized under the banking laws of the state; (b) that the plaintiff was subject to regular examination by the bank commissioner, and that the affairs of the company had been examined by the bank commissioner and found to be in good financial condition; (c) "that all the money that had been invested by subscribers in preferred stock of the said corporation had been, or would be, loaned upon first mortgages on residence or business property, at not to exceed 50 per cent. of the conservative appraised value thereof"; (d) that all money to be paid by the defendant (appellant) should he become a subscriber to the preferred stock, and all money paid by other subscribers, would likewise be loaned upon first mortgages on residence or business property at not to exceed 50 per cent. of its conservative appraised value; (e) that the said plaintiff corporation, from the date of its organization, had conducted a conservative business, and was then doing so, was then solvent, and "that its capital stock was not impaired, and that its preferred stock was of a value in excess of $100 per share"; (f) that all salaries and overhead expenses of the corporation would be paid from other business conducted by it, and not from the banking business, and that neither the proceeds from the sale of the stock nor the earnings would be paid as salary; (g) that one Rasmussen and Andrews had conducted the business for $150 per month and would continue to conduct it for that sum; (h) that the preferred stock carried with it a guaranteed dividend of 7 per cent., and that the corporation then had a surplus out of which said dividends could be paid for many years without regard to future business; (i) that the management of the corporation was dependable and safe, and that the officers would not take advantage of their trust relationship; that the officers had invested largely in the preferred and common stock and would look only to the dividends for the return on their investments; (j) that, by rea-

son of the incorporation of the company under the banking
laws, and the same being subject to examination by the bank
commissioner, the investment was as safe and free from
hazard as if deposited in a solvent bank in the state of Utah;
(k) that out of the profits and income from loans of the
proceeds of the sale of preferred stock on first mortgages,
and from the profits then on hand, the subscribers to the
preferred stock would be guaranteed the payment of divi-
dends of 7 per cent. per annum.

The court sustained the motion of the respondent and
struck from the allegations of the counterclaim sub-
paragraphs e, f, i, j, and k, and the words "would be" of
subparagraph c, and all that part of subparagraph e follow-
ing the word "solvent," to wit, "that its capital stock was
not impaired and that its preferred stock was of a value in
excess of $100 a share."

Paragraph 7 of the counterclaim closes with this sentence:

"And defendants have been damaged by reason of the premises
in the sum of $3,606.57."

In said paragraph 7 it is alleged that more than 35 actions
at law had been instituted on the part of respondent on sub-
scription notes; that many of the makers of the notes were
defending the suits; that a large number of notes had been
returned to the makers; that many of the subscribers for
stock were insolvent, and other stock subscribers had insti-
tuted actions for the rescission of their contracts; that the
preferred and common stock of plaintiff corporation was of
no market value, and but little, if any, intrinsic value. The
court struck these allegations from the counterclaim. The
allegation, as to the amount of damages, follows the enu-
meration of the various alleged fraudulent representations,
and is the concluding allegation of the answer and counter-
claim, and that part of paragraph 7 relative to the amount
of damages was not stricken.

It will thus be seen that the court refused to strike the al-
legations in the counterclaim that the plaintiff was organized
under the banking laws of the state, and was subject to exam-
ination by the bank commissioner; that all its money had
been loaned upon first mortgages on residence and business

property at not to exceed 50 per cent. of its appraised value; that the preferred stock carried with it guaranteed dividends of 7 per cent.; and that said corporation had profits and surplus out of which said guaranteed dividend could be paid for years to come without regard to future business or earnings; that the corporation from the date of its organization had conducted a conservative business and was then solvent, and the amount of damages which the appellant had sustained, if any, by reason of the alleged false representations.

These remaining allegations in the answer and counterclaim were sufficient to permit the appellant to prove the falsity of the material representations claimed to have been made; to prove the solvency or insolvency of the corporation; to prove that the corporation had not been conducted on a conservative basis; that the money had not been invested in first mortgages; and show wherein any damages had resulted to the appellant by reason of such alleged false representations.

It affirmatively appeared by the reply filed that the company was not organized under the banking laws of the state, and that it was not subject to the supervision or inspection of the bank commissioner.

It is not necessary, as we view this record, to determine whether the court erred in its order striking some of the allegations set forth in the motion, as we are of the opinion that the judgment must be affirmed regardless of the ruling of the court on that motion.

The notes set out in the first, second, and third causes of action are dated respectively June 11, June 22, and July 15, 1920. This action was instituted March 8, 1924. The testimony shows that, after the appellant had given these notes, he was frequently at the place of business of respondent; that the business of the corporation was explained to him by its officers; that in 1921 he attended a stockholders' meeting and voted for the directors; that at that meeting he heard read what purported to be a financial statement of the respondent's business and was otherwise familiar with the nature and class of business conducted by respondent. It is

alleged in the answer and counterclaim that appellant did not learn that the representations alleged to have been made by the agents of respondent to appellant were false, until on, or about, November 1, 1922. The court, in its oral review of the evidence, states that the appellant is a man of business experience, and that he, after having attended the stockholders' meeting, and having been advised as to the nature of the business of the respondent company, made payments upon the notes in controversy and received dividends as late as the year 1923. The court was therefore of the opinion that it must find that appellant did not rely upon the representations made, if any fraudulent representations were made. However, we are not required to, nor do we, determine whether by reason of any conduct or acts of appellant, or by reason of the knowledge acquired by him in attending the stockholders' meeting, he would now be estopped from setting up the alleged fraud as a defense to respondent's action. Nor are we required to determine that appellant did not have a right to, and in fact did, rely upon the representations alleged to have been made to him.

The court, among other things, found as follows:

"VI. That it does not appear from the evidence in the case that defendant was in any manner or at all damaged by any representation made by the plaintiff, or plaintiff's agent, or by any act or conduct on the part of the plaintiff through any of its officers or agents, or that the value of the stock subscribed for by the defendant was in any manner or at all affected thereby, and the court finds that, when subscribed for by the defendant, said stock was worth, and was of its par value which, so far as appears from the evidence, has not decreased; and the court finds that the defendant has not sustained any loss by reason of any representation made by the plaintiff or plaintiff's agent, or by reason of any act or conduct on the part of the plaintiff, or any of the officers or agents of the plaintiff; that no evidence was introduced tending in any degree to prove any mismanagement or wrongful diversion of the funds or property of the corporation by any of its officers or agents, either before or after defendant entered into said contracts of subscription, and the court finds against the allegations of defendant's counterclaim with respect thereto."

That finding and other findings are assailed by the assignments of error as not being supported by the evidence and as being contrary to the evidence.

This is a law action. The complaint is based upon three promissory notes. A personal judgment is sought against appellant upon those notes. A defense based upon alleged false representations is relied upon by appellant. The counterclaim is for damages growing out of, and based **3, 4** upon, the claimed false representations made to appellant by the officers and agents of respondent. The nature of the proceeding must be determined by the pleadings. There is nothing in the answer or counterclaim asking for a rescission of the contract or for a cancellation of the notes mentioned in the complaint. The concluding clause of paragraph 7 is:

"And that appellants have been damaged by reason of the premises in the sum of $3,606.57.".

Paragraph 7 is the last paragraph of the counterclaim and follows the enumeration of the alleged false representations. The prayer of the answer and counterclaim is that respondent take nothing by its first, second, and third **5** causes of action, and that appellant be given judgment for the sum claimed as damages, with interest. No other conclusion is permissible than that this is a law action, and that the defense is in the nature of an action for damages based upon fraud and deceit. The trial court was clearly of that view as appears from his oral review of the evidence.

"Whatever amounts to fraud, according to the legal conception, is also fraud in the equitable conception; but the converse of this statement is not true. The equitable theory of fraud is much more comprehensive than that of the law, and contains elements entirely different from any which enter into the legal notion." 2 Pomeroy Equit. Jur. (4th Ed.) § 872.

After diligent search through the record, we are unable to find any evidence tending to show that appellant was damaged or injured in any way by the alleged false representations, if any were made. It is a universally accepted rule that, in order to constitute actionable fraud and deceit, there must not only be an allegation of damages, but there must

also be proof to support that allegation. The allegation of the counterclaim that appellant had been damaged by reason of the false representations is denied in the reply filed by respondent. That matter was therefore an issue of fact. The court's eleventh finding is not only supported by the evidence, but it is the only finding that the court could have made upon that issue, unless it be that part of the finding wherein the court finds that the stock was worth par at the date it was purchased by appellant. There is nothing in the record, unless it be the contract of purchase, to show the value of the stock at the date of purchase, or what its value was at the date appellant learned that the representations were false or at any other time.

The elements necessary to constitute actionable fraud are stated in the first headnote to *Stuck* v. *Delta L. & W. Co.*, 63 Utah, 495, 227 P. 791, as follows:

"Elements of 'actual fraud' consist of (1) a representation; (2) its falsity; (3) its materiality; (4) speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by person and in manner reasonably contemplated; (6) hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury."

In the course of the opinion in that case, the substance of that headnote is copied with approval from 26 C. J. 1062. The same general statement of the law applicable is stated in 12 R. C. L. at page 239, as follows:

"The law requires good faith in every business transaction, and does not allow one intentionally to deceive another by false representations or concealments, and if he does so it will require him to make such representations good, but it does not make one party to a contract responsible in damages for every unauthorized, erroneous, or false representation made to the other, although it may have been injurious. The ground of the action of deceit is fraud and damage, and when both concur the action will lie. Moreover, both' must concur to constitute actionable fraud, a common statement of the rule being that neither fraud without damage, nor damage without fraud, is sufficient to support an action."

In *Ming* v. *Woolfolk*, 116 U. S. at page 602, 6 S. Ct. 491, 29 L. Ed. 740, the court quotes with approval this language from Baron Parke in *Watson* v. *Poulson*, 15 Jurist, 1111:

" 'The requisites to sustain an action for deceit,' * * *. are 'the telling of an untruth, knowing it to be an untruth, with intent to induce a man to alter his condition, and his altering his condition in consequence, whereby he sustains damage.' "

The following cases all either quote or cite with approval the foregoing quotation from *R. C. L. Hope* v. *Shirley* (Tex. Civ. App.) 187 S. W. 973; *Ore City Co.* v. *Rogers* (Tex. Civ. App.) 190 S. W. 226. See, also, *McNulty* v. *Durham*, 63 Colo. 354, 167 P. 773; *Hicks* v. *Stevens*, 121 Ill. 186, 11 N. E. 241; *McGar* v. *Williams*, 26 Ala. 469, 62 Am. Dec. 739; *Murray* v. *Jennings*, 42 Conn. 9, 19 Am. Rep. 527.

The court's eleventh finding quoted is to the effect that appellant sustained no loss by reason of any representations made by respondent or its agents, or by reason of any act or conduct on the part of respondent or its agents or officers; that the value of the stock subscribed for by appellant was in no sense or at all affected by any representations, and that, so far as appears from the evidence, the value of the stock has not decreased since the date it was purchased by appellant.

We are not in this case called upon to—neither do we—determine what appellant might have been entitled to had he sought a rescission of the contract and a cancellation of the notes given to respondent. The authorities, even in cases of that nature, unless there are other circumstances or facts which justify or authorize a court of equity to release a complainant from the terms of his contract, are that the party complaining must not only show fraud, but must likewise show an injury resulting from that fraud.

In 2 Pomeroy, Equit. Jur. (4th Ed.) § 898, it is said:

"Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral."

Counsel for appellant in their brief have quoted extensively from text-writers, and the cases in support of their argument that the representations alleged to have been made by respondent and its agents were such representations as appellant had the right to rely upon. The rule or principle

contended for, as we understand it, on the part of appellant is very clearly stated in the quotation found in their brief, taken from 2 Fletcher, Cyc. Corps. § 625, as follows:

"As a general rule, if a positive representation as to a material fact is made to a person to induce him to subscribe for stock in a corporation, with the intent that he shall rely upon it, and the fact is one as to which the person making the representation can be supposed to have knowledge, the subscriber has a right to rely upon the same, and is not bound to make independent inquiry or investigation to ascertain for himself whether it is true or false; and if a subscription, therefore, is in fact induced by a false and fraudulent representation of fact, the subscriber's right to rescind cannot be resisted by the corporation on the mere ground that he was negligent in relying upon the representation, and that he could have ascertained the truth if he had made inquiry or investigation."

No fault can or ought to be found with the rule contained in the foregoing quotation or in the numerous authorities cited, but these general rules do not relieve the party complaining of the necessity of showing damages sustained by reason of acting upon the representations made. Indeed, the author of Fletcher, supra, in the section immediately following the one from which the quotation is taken, says:

"To constitute fraud, there must be some injury. In no case can a subscriber for shares avoid his subscription because of false representations, if he has not been injured or prejudiced thereby."

Other questions are discussed in the brief of counsel for appellant, but as we view this record the failure of the appellant to show wherein he had been damaged in any way is conclusive of his right to defeat a judgment against him or to recover a judgment upon his counterclaim. The issues made by the pleadings, after the court had stricken such parts of the counterclaim as were stricken, were sufficiently broad to entitle the appellant to prove any damages that he had sustained by reason of the claimed false representations. The stock appellant agreed to purchase was preferred stock. The corporation could not make a valid contract binding the corporation to pay dividends upon stock of that nature, unless profits of the business authorized payment of the dividends provided for in the certificate of stock. Cook on Corps. (7th Ed.) § 271.

It follows from what has been said that there is no preju-
dicial error in the record. The judgment therefore should be,
and accordingly is, affirmed with costs.

CHERRY, J., concurs.

THURMAN, J. I concur in the opinion of the CHIEF
JUSTICE solely for the reason, as I read the record, that,
although having the opportunity under the pleadings, de-
fendant failed to show that he had sustained damages by the
alleged false representations.

FRICK, J. (concurring). At first I was much impressed
with the contention that the district court had committed
error, prejudicial to the defendant, in striking parts of his
counterclaim and in its findings of fact. I have, however,
carefully examined the pleadings upon which the case was
tried and submitted, and, in connection therewith, the motion
to strike certain parts of the counterclaim and the court's
order ordering certain parts to be stricken. I have also care-
fully read all of the evidence produced by the parties, and all
of the proceedings of the district court as certified up in the
bill of exceptions. After a careful examination of the whole
record, including the evidence, and keeping in mind the
theory upon which the case was tried in the district court, I
have become convinced that the findings and judgment of
the district court should prevail. The pleadings, especially
those of the defendant, are very voluminous, containing many
repetitions and much evidentiary matter. In addition to that
many of the averments contained in defendant's counterclaim
contain matters that under no circumstances would sustain
findings or judgment in favor of the defendant in an action
for deceit like the one at bar. The averments, that were
stricken by the district court, principally related to what the
plaintiff expected to accomplish in the future. But even if
we assume that there were some averments which were
stricken that were material and proper, yet there were abun-
dant averments that remained in the counterclaim under

which the defendant could have proved everything that was material to his defense and counterclaim. In addition to all that, the court was exceedingly liberal in the admission of evidence, and especially so on behalf of defendant. Indeed, the court admitted practically all of the evidence that defendant's counsel offered at the trial. So far as the record discloses, the court excluded nothing that was material to the issues.

The contention that the court made findings upon some of the matters stricken from the counterclaim is, in my judgment, not tenable. The averments respecting the solvency of the plaintiff, that its capital stock was impaired and that its stock was not of the value represented by it were not stricken, and the defendant, if he so desired, had the right to produce evidence respecting all of those matters. An examination of the record will further disclose that he offered no evidence whatever respecting those matters. Moreover, under the averments that defendant was damaged, he could produce evidence respecting the value of the capital stock of plaintiff had he felt disposed to do so. He, however, produced none.

The court, however, found, upon defendant's own statements, that in purchasing the stock he did not rely upon the alleged false representations, and that he was not deceived by the plaintiff or its agents. In view of the nature of the action, if these findings are supported by any substantial legal evidence, we cannot interfere with the judgment, nor would the question respecting the value of the stock and other averments be material. According to the defendant's own statements, he was an experienced business man. He testified that at the time he purchased the stock, and at the time of trial, he was a director and acting as such in a banking corporation; in a corporation engaged in the canning business; in a corporation conducting a milling business; and in another corporation. Besides that he was a stockholder in other corporations. Further, that he at various times visited the business office of plaintiff and went over its business affairs with some of the officers in charge; that he attended several stockholders' meetings and voted his stock, and that

his brother was a director of the plaintiff corporation. Considering all of those matters, and the further fact that it was within the province of the district court to determine the weight or effect that should be given the defendant's statements, this court, in my judgment, would be going too far if it would, upon this record, undertake to interfere with the findings and judgment of the trial court.

While it is true that the defendant testified that at the time of trial he was 75 years of age, yet, apart from the fact that he is illiterate, there is nothing to indicate that he is not, and at the time he purchased the stock was not, physically and mentally strong and vigorous. Indeed, in view of the many positions that he holds in the several corporations, it is but fair to assume that his business associates regard him as a business man of more than ordinary ability. In view of the whole record I, too, am of the opinion that the judgment should be affirmed.

STRAUP, J. I dissent. The order striking matters from the counterclaim is rather uncertain. From portions of it, it appears that the whole, and from other portions only a part, of (e) was stricken; and from other portions the whole, and from other portions none, of (d) was stricken. If the whole of (e) was stricken, then was stricken the alleged representation that the plaintiff was solvent. If only a part was stricken, then was stricken only the allegations "that its capital stock was not impaired, and that its preferred stock was of a value in excess of $100 a share."

By his assignment of errors, the defendant has not claimed that the whole, but only a part, of (e) was stricken. I therefore assume that the whole of (e) was not stricken.

That the whole of (d) was stricken is conceded by the plaintiff, and the ruling defended by it on the ground that the alleged representation in such respect was only promissory, upon which no reliance could be justified.

I think the court erred in striking (d). The stricken allegation is something more than mere promissory. It is a representation more in the nature of what the plaintiff was doing at the time of the negotiations and of and concerning

the course and character of its business, and related to a matter peculiarly within plaintiff's knowledge and concerning which the defendant had not equal or available means or opportunity of knowledge. 26 C. J. 1090.

I also think the court erred in striking that portion of (e) which was stricken. It was stricken, and the ruling defended on the ground that misrepresentations of value are nonactionable. I recognize the general rule that where the parties dealt at arms' length with equal means of knowledge there ordinarily cannot be any redress for misrepresentations as to value, because in such case the hearer should investigate and judge for himself. However, misrepresentations of value may, under certain circumstances, be treated as actionable, where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain, or where the truth of the speaker's statement was made the controlling element of the transaction, or where the speaker knows or intends that the hearer will rely upon his representation of value. 26 C. J. 1217 et seq. and cases.

The rule is stated in *Southern Tr. Co.* v. *Lucas*, 245 F. 286, 157 C. C. A. 478, that a statement as to value is an expression of opinion in most instances; but where it is made under conditions which show that it was intended by the one uttering it to be true as an important factor, inducing action, and was made with knowledge that it would be accepted as a basis of action, instead of a mere element to be investigated by the other before action, it becomes for all practical and effective purposes a statement of fact, and is classed as such. So, too, in *Griesa* v. *Thomas*, 99 Kan. 335, 161 P. 670, it is said that while the rule is that statements of value or market price of familiar commercial commodities like grain, wool, and the like, are ordinarily mere matters of opinion, yet the rule is otherwise where the value or market price is difficult of ascertainment, and where the vendor is familiar with such value and the vendee is not. Where an unfamiliar kind of property is involved, and the market value is not easily ascertained, representations of its market value are usually considered as a statement of fact and not of opinion.

Under the stricken allegations, when considered in connection with other alleged misrepresentations, it was competent for the defendant to make evident these necessary elements, and which, in effect, were made evident. The stricken alleged representations were not made solely or independently of all other matters of the negotiations, but in connection with them and with other alleged misrepresentations of present or past facts the competency and materiality of which are conceded. In the complaint it was alleged that the notes were given for "unsubscribed and unissued" preferred and common stock of the plaintiff. In such instance, the value of such stock is difficult of ascertainment. Only those connected or familiar with the internal affairs and pursuits of the company could properly judge it. Recourse to sales on the general market was not available because nonexisting. In such case, a misrepresentation that the capital stock of the company was not impaired, and that its preferred stock was in excess of par value, made by one as of personal knowledge to another knowingly in ignorance of the value to rely and act on it, and to induce him to subscribe for and purchase such stock is actionable, at least defensive, in a suit on the notes.

I also think that the court erred in striking from paragraph 7 the allegation that the preferred and common stock of plaintiff had no market value and but little, if any, intrinsic value. Such matter was alleged, not as a representation, but as a fact. I think it, in connection with other allegations of the counterclaim, was material.

The plaintiff, in its reply to the defendant's answer and counterclaim, admitted that it was not organized under the banking laws of the state, and was not subject to such laws nor to examination or inspection by the state bank examiner; that the preferred stock carried with it a guaranteed dividend of 7 per cent. per annum; that not all of the money paid on subscriptions and loaned by plaintiff had been loaned on first mortgage real estate securities, and averred that the greater part thereof was loaned on, or invested in, second mortgages; and that the plaintiff was engaged in a loan, real estate, and insurance business.

The court found that the only representation made by plaintiff to defendant to induce him to subscribe for stock, and to give the notes sued on, was that plaintiff "was organized under the laws of the state of Utah, and that its affairs are subject to regular examination by the state bank examiner." The court further found that plaintiff did not represent that moneys obtained by it from stock subscriptions had been or would be loaned on first mortgages on residence or business property or other real estate, or that plaintiff was solvent, or that it had profits or a surplus out of which dividends would be paid for many years without regard to future business or earnings, or that plaintiff made any other representations to induce defendant to subscribe for stock or to give his notes, or that defendant by reason of any representations made by plaintiff to him was deceived or misled either in subscribing for the stock or in the giving of his notes; that when plaintiff represented that it and its business were subject to examination by the state bank examiner plaintiff and its officers making such representation then honestly believed that the examiner had such power, and that the business affairs of plaintiff would from time to time be examined by the examiner, and that in making such representation neither plaintiff nor any of its officers intended to deceive or defraud the defendant, and that defendant in subscribing for stock and giving his notes did not rely on such or any representation made by plaintiff; that defendant was an experienced business man, a director in a bank and in other corporations and knew the business in which plaintiff was engaged, and with such knowledge thereafter attended a meeting of the stockholders of plaintiff and cast his vote in the election of members of the board of directors of plaintiff, and at which meeting a financial report of the condition and progress of plaintiff and of its assets and liabilities was read and discussed, and that the defendant did not disapprove of the same nor did he protest against the manner in which the business of plaintiff was conducted, and not until this action was commenced did the defendant assert any claim that he was deceived; that plaintiff's managing officers were each paid $450 a month, and that such compensation was reason-

able, and that no representation was made that they or any of them were to be paid only $150 a month. Then the court found that it did "not appear from the evidence" that defendant was damaged by reason of any alleged representations made by plaintiff, or that the value of the stock was affected by reason of them, and when the stock was subscribed for by defendant it was worth par value, and "so far as appears from the evidence has not decreased," and that the defendant has sustained no loss by reason of any representations made by plaintiff.

No evidence was given as to the solvency or insolvency of the plaintiff. The court, nevertheless, found, without any evidence on the subject, that the plaintiff was solvent. Neither was there any evidence given as to the value of the corporate or capital stock of the plaintiff. Notwithstanding the allegations in the counterclaim in such respect to the effect that the stock was of no substantial value were stricken, and hence no evidence with respect thereto adduced, the court, nevertheless, without any evidence on the subject, found that the stock, when subscribed for by defendant, was worth par, and that there was no evidence to show that its value thereafter decreased. By thus granting the motion to strike in such particular the defendant, as to such matters, was disarmed and prevented from making them evident. But after such matters were stricken and no evidence respecting them adduced, and the court, without evidence, finding that the stock was worth par, then found that the defendant had not shown that he had sustained any loss or damage. Under such circumstances, a finding so made on a stricken issue and without evidence ought to be set aside. If the defendant, by reason of a material false representation, was induced to subscribe for capital stock of no substantial value, and paid cash and gave notes therefor, he was injured and sustained loss to the extent of money paid by him; and, if required to pay the balance due on the notes, he will be damaged and injured to such additional extent.

The defendant gave considerable evidence to show that it was represented to him by plaintiff, when he subscribed for

the stock and gave his notes, not that plaintiff was merely organized under the laws of the state of Utah, as found by the court, but that it was organized under, and was subject to, the supervision of the banking laws of the state, and was conducted on the same principle—run the same—as a bank and was subject to examination and inspection by the bank examiner. There is no evidence in the record to dispute that testimony. One of the managing officers of plaintiff testified that it was represented to defendant that plaintiff was under the supervision of the banking department. In a prospectus, admittedly put out and circulated by plaintiff, it was printed in bold type:

"State laws provide protection. This company is under the state banking supervision and its financial condition subject to regular examination by the banking department of the state."

There is no dispute in the evidence as to this. Defendant thus was entitled to a finding, not only that plaintiff represented that it was organized under the laws of the state of Utah, as found by the court, but, as alleged by the defendant and indisputably proven, that it was organized under the banking laws of the state, and was under the banking supervision of the state. I regard such a representation, as alleged and proven, pertinent and material. It is generally known and understood that banking business and banking institutions are ordinarily conducted on safe and conservative principles and methods, and are governed and controlled by legislative restrictions and regulations and subject to examination and inspection by public authority. A representation that a company, in which one is solicited to make an investment or to purchase its capital stock, is organized under such laws and is subject to such supervision and is conducted on such principles and methods, has a natural tendency to engender a feeling of assurance and reliance that an investment in such a company is as safe and as well guarded and protected as an investment in a banking institution. That was what was represented to the defendant. The representation was made to induce him to subscribe for stock and to give his notes. It was made to so satisfy and assure him. He testified that he believed the representation to be true; that he

relied on it, and that without it he would not have subscribed
for the stock or given his notes. Again, I see not anything in
the record to dispute that testimony. Defendant was an old
man, 75 years of age. He could neither read nor write. Such
a representation, if untrue, was calculated to mislead and de-
ceive him. Ordinarily, men of that age no longer speculate
or hazard their capital or earnings. They aim to place what
investments they make where they may be regarded safe.
That was what defendant thought he was doing. And that
is what he was told by plaintiff, that "the state laws provide
protection." It was indisputably shown, and it was admitted
by plaintiff, that it was not organized under, and was not sub-
ject to, the supervision of the banking laws of the state nor
to examination or inspection by the state bank examiner, and
that it was organized to buy and sell real estate, stocks, bonds,
and mortgages, erect and rent buildings, make loans and in-
vestments, negotiate loans for others, and to carry on a
general fire, life, and accident insurance agency. Thus the
falsity of the representation was clearly established.

It was averred in the counterclaim and it was shown by the
evidence, that it was represented by defendant that loans
made by plaintiff had been and would be made only on first
mortgages on residence and business property. The pro-
spectus put out by plaintiff in such respect recites:

"Loans and investments in this department. The funds of the
company are loaned upon first mortgages, on residence or business
property, at not to exceed 50 per cent. of a conservative appraised
value thereof."

There is not anything in the record to dispute such evi-
dence. The court, nevertheless, found that no such repre-
sentation was made. Thus that finding, likewise, ought to
be set aside. The facts averred and proven in such respect
were relevant and material. Such a representation, if un-
true, also is calculated to mislead and deceive an investor and
to induce him to invest when otherwise he would not do so.
One may well regard a company in the loaning business and
lending its money on first mortgage real estate securities at
not to exceed 50 per cent. of a conservative appraised value
as safe, but one where the greater part of its loans are made

on second mortgages, or in the purchase of second mortgages, or on building contracts, as precarious and doubtful. The evidence is without conflict, and it was averred by plaintiff in its reply, that the greater part of its loans and investments were on second mortgages, or in the purchase of second mortgages, or in buying building contracts. So, such representation was likewise shown to have been false. On the record, the defendant was entitled to such a finding.

The court also found that it was not represented to defendant that plaintiff had profits or a surplus out of which dividends on preferred stock were paid regardless of future business and earnings. Defendant and his witnesses testified that such a representation was made. Plaintiff, by its prospectus, in such particular, represented that "dividends and profits or interest rate as it may be called, is guaranteed to be 7 per cent. per annum, payable semiannually, in addition to this, preferred stock participates in the surplus earnings of the company so that if the company has large earnings during the year, large profits or earnings may be reasonably expected; but you have the 7 per cent. annually no matter what the earnings of the company may be." Thus, that such a representation was made is again indisputably shown. Yet the court found it was not made. Hence, that finding too ought to be set aside.

Of less importance, but not of irrelevancy, is the alleged representation that the managing officers of plaintiff were each paid only $150 a month. The court found that they were each paid $450 a month, but found that no representation was made that they were to be paid only $150 a month. But the evidence, without conflict, shows that such representation was made. Standing by itself, the representation might not be of much significance, but, regarding it with other representations, I think it of some materiality. At any rate, defendant was entitled to a finding on it and one, not as found by the court, in discord with the evidence, but in harmony with it.

The court further found that the defendant knew that plaintiff was not engaged in the banking business, and knew

the character of business in which the plaintiff was engaged. But the court did not find when the defendant acquired such knowledge. Plaintiff alleged he had such knowledge when he subscribed for the stock and gave his notes. The court, however, did find that, by reason of such knowledge, defendant did not rely upon the representation that plaintiff was organized under, or was subject to, the banking laws of the state or subject to examination by the examiner. From such finding, the further finding may be implied that defendant had such knowledge when he subscribed for the stock and gave his notes. If such effect be given the finding, then the pertinent inquiry is whether such a finding is supported by the evidence. The defendant testified that he had no such knowledge or information until more than two years after he subscribed for the stock and gave his notes, and that he made no payment on the notes after he acquired such information. One of the managing officers of the plaintiff testified that about a month—he was not certain just when it was—after the defendant had subscribed for the stock and had given his notes he told the defendant that the plaintiff was buying building contracts and operating an insurance and real estate business. Another managing officer of plaintiff testified that, about two or three weeks after defendant had subscribed for the stock, and had given his notes, he explained to him that plaintiff loaned money on mortgages and sometimes on real estate contracts, helped to finance the building of homes, and did a general insurance business and frequently bought second mortgages or real estate contracts at a discount; but that he also then told defendant that plaintiff was under the supervision of the banking department, and further testified that he then believed such statement to be true, and did not know to the contrary, until about six months or more after defendant had subscribed for the stock and had given his notes. It was further testified to by the managing officers of plaintiff that, when they learned the representation was not true, no notice to such effect was given to defendant or to any subscriber, but all were left to believe as it was represented that plaintiff was under the supervision of the banking laws of the state, and its business affairs sub-

ject to examination by the examiner. It is thus difficult to reach a conclusion that the defendant, when he subscribed for the stock and gave his notes, knew that such representation was not true, when the managing officers of plaintiff themselves, as they testified, did not know that the representation was false until six months or more after defendant subscribed for the stock and gave his notes. Further, there is no evidence to show that defendant, when he subscribed for the stock and gave his notes, then knew that the representation was not true. The evidence shows that whatever information in such respect was acquired by him was after he subscribed for the stock and gave his notes. Hence it follows that the finding that defendant, when he subscribed for the stock and gave his notes, knew that the representation was not true, if such effect be given the finding, is not supported by the evidence, and ought to be set aside.

The finding that the plaintiff and its managing officers honestly believed such representation to be true, and that it was not made with intent to deceive or defraud defendant does not, under the circumstances, relieve the plaintiff from responsibility. Where a party represents a material fact to be true as of his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is untrue, he, under the law, is guilty of falsehood, though he believes it to be true; and if the statement is made with intent that it shall be acted upon by another who does act on it to his injury, the result is actionable fraud. So, if a party, to induce another to act, undertakes to make a direct representation of a material fact as being of his personal knowledge, even though he be mistaken as to the fact, if the other party is thereby induced to act, and does act, upon such representation to his injury, the law will afford him relief. Such doctrine proceeds on the theory that one is not permitted to get a benefit through a statement which he now admits to be false and may not be heard to say, to relieve himself from liability, that when he made the representation he did not know it to be false or believed it to be true. He ought to have found that out before making the statement as of personal knowledge, and no one ought to be permitted to take

advantage of his own false statement. Thus, however innocent the plaintiff may have been in making the representation, and though it may have been mistaken, yet, if such representation was made to induce the defendant to subscribe for the stock and induced him to do so, and had the effect to mislead and deceive him or influence his conduct in subscribing for the stock, and the giving of the notes to his injury, the result, nevertheless, is actionable fraud. The cases supporting such view are found collected and cited in 33 A. L. R. 862-876. See, also, Story, Eq. Jur. § 193; 26 C. J. 1109.

I recognize that the representation with respect to the payment of dividends borders closely on the line between a statement of a material and present fact and an expression of opinion. A representation, which is expressed and understood as nothing more than a statement of opinion, does not constitute actionable fraud, especially where the opinion is honestly entertained. But here there is a blending of a statement of a material and present fact and the expression of an opinion. The statement that plaintiff had funds or a surplus on hand with which to pay dividends, regardless of future earnings, is a declaration of an existing fact. That it had sufficient funds or surplus to pay them for some time, or for many years, something in the future, was largely an expression of an opinion or prediction. They, however, were parts of one declaration, and declared together at one and the same time. The party making them and chargeable therewith had superior knowledge of the subject and declared them as of personal knowledge to induce the defendant and others to rely and act on them, not only on a part but on the whole of the declaration. The representation, if not true, was calculated to mislead and deceive. I thus think it was a material and actionable representation if untrue and relied and acted on by defendant to his injury. 20 Cyc. 18; 26 C. J. 1085, and cases cited in 33 A. L. R. 877.

The same principle applies to the representation that moneys obtained by plaintiff from stock subscriptions had been, and would be, loaned only on first mortgage real estate securities on a conservative value. The representations here

considered are something more than mere expressions of opinion, or of mere estimates or promises.

Acts and conduct of defendant after he learned that plaintiff was not organized under the banking laws of the state, nor subject thereto, or to examination by the bank examiner, and that the other representations made were not true, were not pleaded as an estoppel, ratification, or acquiescence. What was pleaded by plaintiff in such respect was that defendant "when he subscribed for the capital stock of plaintiff was fully informed as to the objects, purposes, and powers of the plaintiff corporation; that it was not doing a banking business nor authorized by law to carry on such business, and that it was engaged in the real estate and insurance business and conducted such a business, and that a part of its capital stock was employed in the purchase of second mortgages or loaned on second mortgages," and hence, having such knowledge when he subscribed for the stock, the defendant did not rely, nor in law was he entitled to rely, on such representations. Such, however, is not pleading an estoppel with respect to such matters; but merely that defendant, because of such knowledge, was not justified in relying, and did not rely, on such representations. Nor does the further averment in the reply, and as found by the court, that defendant made no claim of being deceived, until after this action was commenced, and did not until then assert "that he was opposed to plaintiff's investment of any of its capital in second mortgages and, on the contrary, approved the same" meet the requirements of an estoppel even as to such particulars, much less as to other representations, especially as to the value of plaintiff's stock and the character of business carried on by it.

The finding that defendant was a director of a bank and other corporations, while material, yet is not controlling. The evidence shows that defendant was a director of a small bank at Layton, Utah, and a director of a canning factory and of a ranch. But the evidence does not show that he was, or ever had been, active in any of such corporations or actively participated in the management of any of them. He testified he knew a little about banking business, but did not

know much about other corporations. What inference may be deduced from such finding against defendant is, to a large extent, overcome by the fact that he was 75 years of age and could neither read nor write.

Nor do I think the fact that defendant, after he subscribed for the stock, attended a stockholders' meeting and there voted his stock in the election of a board of directors and heard read a financial statement as to the condition of the company of much importance, without a further showing, of which there is no evidence, that he understood such report or was familiar with similar reports. Financial statements of such and of other similar corporations, as usually put out, with a classification and transposition of denominated assets of self-serving values and of stated liabilities, and of items of discount and surplus of variant meanings operated like a shuttlecock between them, generally do not mean much to the ordinary person, much less to one 75 years of age who can neither read nor write, and often are understood only by accountants or by those having knowledge of methods and terms of accounting, and when understood frequently are not what they seem.

The aggregate amount of the three notes sued on is about $8,800. The defendant made part payments on the notes, some shortly after the notes were given, some about six months, and some about a year thereafter, aggregating about $1,906. In addition to that he paid off another note and paid cash when he subscribed for some of the stock amounting to more than $1,000. He purchased all of the stock at par, the preferred at $100 a share, the common at $1 a share. The aggregate amount of moneys paid by him on the stock amounting to about $3,000 was pleaded by him by way of counterclaim and was sought to be recovered back. No other demands were made by the counterclaim. The plaintiff, after giving the defendant credit for part payments on the note, was given judgment for about $8,189, including interest and attorney's fees. The misrepresentations were pleaded both as defensive and affirmative relief. Two aspects are thus presented, one as to the pleaded defense to the notes, the other the affirmative relief to recover back what was paid on

them. Because the defendant should not be entitled to prevail on the latter ought not destroy his right to prevail on the former. If the stock, when the defendant subscribed for it, and thereafter, had no substantial value, the fact that he had partly paid for it does not prevent him, when sued for the balance, to defend against it, nor should he in such case be required to pay the balance, though he should not be entitled to recover back what was paid by him.

I think the trial a mistrial. I cannot approve the action of the court striking material allegations from the counterclaim, thereby preventing the defendant from making them evident, then without evidence making findings on them and making other findings against the evidence, and then reaching the conclusion that the defendant had sustained no loss and was not injured. I think the findings should be set aside, the judgment reversed, and the case remanded for a new trial.