Ardell **GALLOWAY** and Frances Galloway, Plaintiffs and Respondents,

v.

**AFCO DEVELOPMENT CORPORATION**, Grant **Affleck**, and Kim **Mangum**, Defendants and Appellants.

No. 880205–CA.

Court of Appeals of Utah.

July 5, 1989.

---

Duane A. Burnett, Bountiful, for defendants and appellants.

Ellen Maycock, Salt Lake City, for plaintiffs and respondents.

Before DAVIDSON, BENCH and BULLOCK,[1] JJ.

## J. ROBERT BULLOCK, Judge:

Defendant Kim Mangum appeals from a judgment holding him liable for fraud in connection with an investment by the plaintiffs Ardell and Frances Galloway in the now defunct Afco Development Corporation ("Afco"). We affirm.

Mangum was a next door neighbor to the Galloways and well acquainted with them. In 1979, Galloways had at their disposal a fund accumulated for their retirement. Mangum discussed with Galloways the prospect of investing in Afco, a real estate development firm for which Mangum was employed as a sales representative. Ardell Galloway testified that Mangum told him their investment would yield monthly income for the remainder of their lives without depleting the principal, and on their death, their heirs would inherit the principal. Mangum further assured them that Afco would provide adequate security for their investment. The Galloways were given documents to review, and they consulted an attorney. Mangum arranged for them to meet with himself and Grant Affleck, Afco's president, in the Galloways' home. At that meeting, in which both Affleck and Mangum jointly participated, the Galloways were told that their investment would be secured by real property consisting of four lots in an Afco-developed subdivision, which would have a value at least 20% greater than the amount of their investment.

---

1. J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(1)(j) (1987).

On November 1, 1979, the Galloways and Afco signed a "Private Annuity Agreement," Afco signed a note payable to the Galloways, and the Galloways paid Afco $52,000. Afco thereupon paid Mangum a commission of four per cent of the $52,000 received. Soon thereafter, the Galloways realized that the documents they had signed did not contain any provision for security, and they inquired of Mangum. Afco thereupon executed a "Security Agreement" and "Notice of Interest" in favor of the Galloways and gave them a written summary of the collateral which it claimed to have provided them as security.

For the 22–month period of December, 1979 through September, 1981, Afco paid the Galloways $747.50 per month as agreed. In October, when Afco missed its first payment, the Galloways consulted an attorney, who obtained for them a trust deed on the lots which were to serve as security for their contract with Afco and which they had not theretofore received. However, Afco made no further payments and filed a petition in bankruptcy, as did co-defendant Grant Affleck. The Galloways were unable to realize any monies on the lots given as security for their investment because prior encumbrances on them exceeded their value. Thus, the representations of Mangum to the Galloways concerning the adequacy of the security for their investment were false, and the trial court found that Mangum "knew or should have known" them to be false. The trial court further found that the Galloways relied reasonably on Mangum's representa-

tions. Judgment was granted to the Galloways.

Mangum argues on appeal that the facts fail to fully establish common law fraud,[2] in that (1) the misrepresentations regarding adequacy of security were not of a presently existing material fact, and (2) scienter is lacking because Mangum did not know of the falsity of his misrepresentations.

■■■ To be liable for fraud, a defendant's misrepresentation must be of a presently existing fact. However, it is settled that a misrepresentation of present promissory intention is a misrepresentation of a presently existing fact.[3] Moreover, at least some of Mangum's representations concerning the adequacy of security appear from the findings to relate to security as it existed at the time of the representations, rather than to any promise to provide security or investment safety in the future.[4] We therefore conclude that Mangum's representations were of facts sufficiently present in time to sustain liability for fraud.

Turning to the question of scienter, the mental element of fraud, Mangum argues that scienter was not sufficiently established, because he was unaware of which lots would serve as security for the Galloways' investment and of the amount of prior encumbrances. The trial court's finding concerning knowledge is that Mangum "knew or should have known that the representations made by him to the Galloways concerning the collateral for their investment [were] false." To the extent that this alternative finding holds that Mangum knew his representations to be false, Man-

**2.** For misrepresentations regarding investments, a claim based on securities regulatory laws such as Utah Code Ann. § 61–1–1 (1986) or 17 C.F.R. § 240.10b–5 (1988) may more aptly apply than common law fraud, the only basis for recovery pleaded in this case. *Pierce v. Richard Ellis & Co.*, 62 Misc.2d 771, 310 N.Y.S.2d 266, 269 (N.Y. Civ.Ct.1970).

**3.** *Von Hake v. Thomas*, 705 P.2d 766, 770 (Utah 1985); *see also Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608 (Utah 1982); *Berkeley Bank for Coops. v. Meibos*, 607 P.2d 798, 805 (Utah 1980). It does not matter, for purposes of the temporal presence of the representation, whether the promisor is the same person as the

representor. In this case, Mangum made representations of Afco's promissory intention, which, at the time, was a matter of present fact.

Parties who participate jointly in a fraud may be held jointly liable. *Schwartz v. Tanner*, 576 P.2d 873, 875 (Utah 1978).

**4.** The findings, though less explicit on this point than could be desired, note, for example, that "Mangum specifically represented to the Galloways that there was sufficient equity in the four (4) lots to secure the amount of the Galloways' investment." The tense and aspect of the verbs employed would seem to indicate that the representation concerned contemporaneously existing equity in the lots.

gum's argument is directed against the substance of the finding. We reverse a finding of the trial court only if an examination of the record shows the finding to be clearly erroneous,[5] which is not the case here.

■ The alternative finding that Mangum "knew or should have known" that his representations were false straddles the distinction between common law fraud, requiring intent, and negligent misrepresentation, for which intent is immaterial. Intentional fraud generally [6] requires a showing of intent to deceive, that is, the misrepresenter's intent to induce the victim's reliance on the false representation.[7] The intent to deceive, required for common law fraud, may be inferred where a misrepresentation is voluntarily communicated to the victim with knowledge that it is false, or without knowing whether it is true or false but knowing that the victim is likely to rely on it.[8] Thus, as noted in *Pace v. Parrish*,[9] it is sometimes said that a "reckless" misrepresentation, made "knowing that the [the misrepresenter] had insufficient knowledge upon which to base such a representation" is tantamount to the intent to deceive.

■ The intent to deceive essential to liability for common law fraud contrasts with negligence. The negligent misrepresenter need not be shown to have any intent to deceive the victim, and he general-

ly does not demonstrably know that what he says is false. The law imposes on him a duty to reasonably assure the accuracy of what he represents, because of his superior position to obtain the needed knowledge and his pecuniary interest in the transaction.[10]

■ In this case, if Mangum knew that his assurances of investment safety were false, then that fact would adequately support a finding that he intended to deceive, thus satisfying the scienter requirement of common law fraud. On the other hand, the findings alternatively indicate negligence, since they hold that Mangum "should have known" his representations were false. As a professional real estate agent and Afco insider, Mangum was in a far better position than the Galloways to ascertain whether the security for their investment was indeed adequate, as he had represented. Mangum also received a commission for inducing the Galloways to invest. Mangum was thus under a duty to ascertain the truth of his representations to the Galloways concerning the adequacy of the security he represented they would receive. In failing so to do, he was negligent, and, therefore, liable for negligent misrepresentation.

Mangum's principal argument against negligent misrepresentation, as distinguished from common law fraud, is that the Galloways pleaded only common law

5. *State v. Mitchell*, 769 P.2d 817, 818 (Utah 1989); *Zions First National Bank v. National. Am. Title Ins. Co.*, 749 P.2d 651 (Utah 1988); *see also Schwartz v. Tanner*, 576 P.2d 873 (Utah 1978).

6. Intent need not be shown where the victim stands in a confidential relationship with the misrepresenter. *Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978).

7. *See Fleming v. Fleming–Felt Co.*, 7 Utah 2d 293, 323 P.2d 712, 715 (1958).

8. W.P. Keeton, D.B. Dobbs, R.E. Keeton & D.G. Owen, *Prosser and Keeton on Torts*, 741–42 (5th ed. 1984).

9. 122 Utah 141, 247 P.2d 273 (1952).

10. *See Christenson v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 305–06 (Utah 1983); *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980);

*Jardine v. Brunswick Corp.*, 18 Utah 2d 378, 423 P.2d 659, 662 (1967); *Ellis v. Hale*, 13 Utah 2d 279, 373 P.2d 382, 385 (1962); *Restatement (Second) of Torts* § 552 (1965); *cf. Loveland v. Orem City Corp.*, 746 P.2d 763, 769–70 (Utah 1987).

The duty underlying negligent misrepresentation is grounded in tort law. *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59–60 (Utah 1986). In addition to relief in tort, the contract underlying the tortfeasor's pecuniary interest in the transaction may include warranties that could support a contractual duty, the scope of which is objectively determined according to the parties' manifestations of intent. *See Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974); *Restatement (Second) of Contracts* § 2 comment b (1979). In this case, whatever contractual relation or third-party beneficiary status may have existed between these parties has not been argued.

fraud. The distinction between fraud and negligent misrepresentation is not carefully drawn in the Galloways' pleadings. However, the issues of duty and negligence seem to have been tried without valid objection, and, such being the case, those issues are "treated in all respects as if they had been raised in the pleadings." [11]

Since sufficient grounds were established for holding Mangum liable for either common law fraud or negligent misrepresentation, we find no error in the judgment of the trial court, and it is accordingly affirmed.

DAVIDSON and BENCH, JJ., concur.

**11.** Utah R.Civ.P. 15(b); *Mabey v. Kay Peterson Const. Co., Inc.,* 682 P.2d 287 (Utah 1984); *Colman v. Colman,* 743 P.2d 782, 785 (Utah App. 1987).