ALTA HEALTH STRATEGIES, INC., a Delaware corporation, Plaintiff,

v.

Carole L. KENNEDY, and Peter O'Donnell, Defendants.

Carole L. KENNEDY and Peter O'Donnell, Counterclaim Plaintiffs,

v.

ALTA HEALTH STRATEGIES, a Delaware corporation; W. Terry Nofsinger; Rodman W. Moorhead, III; and Does I and II, Counterclaim Defendants.

No. 90–C–446A.

United States District Court, D. Utah, C.D.

April 14, 1992.

Jill N. Parrish, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, Utah, for plaintiff and counterclaim defendant Alta.

Stanford B. Owen, Fabian & Clendenin, Salt Lake City, Utah, for defendants and counterclaim plaintiffs Kennedy and O'Donnell.

David R. Money, Murray, Utah, for counterclaim defendants Nofsinger and Moorhead.

ALDON J. ANDERSON, Senior District Judge.

This matter is before the court on the motions of Plaintiff and Counterclaim Defendant Alta Health Strategies, Inc. ("Alta") for Partial Summary Judgment and to Compel Discovery. The court heard oral argument on February 28, 1992, and took the matters under advisement. Jill N. Parrish of Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, Utah, appeared for Alta. David R. Money, Salt Lake City, Utah, appeared on behalf of Counterclaim Defendants Nofsinger and Moorhead. Stanford B. Owen of Fabian & Clendenin, Salt Lake City, Utah, represented the Defendants and Counterclaim Plaintiffs Carole Kennedy and Peter O'Donnell. The court, having reviewed the record and the relevant law, is now prepared to rule.

## I. BACKGROUND

Alta is a managed health care company with its headquarters in Salt Lake City, Utah, and was formed in the fall of 1986 as the result of the leveraged buyout of the James Benefit Division. After its formation, Alta sought to hire a senior executive to aid in its transition from a third party administrator to a managed health care company, a transition which would position the company for a public stock offering. Alta originally anticipated an initial public offering of its stock in the fall of 1988, but poor financial performance and the condition of the stock market prevented an actual public offering until January 1991. In the spring of 1987, Alta approached Kennedy, who had nineteen years experience in managed health care, to offer employment as a senior vice president. At about the same time, Alta offered employment to O'Donnell, a health benefits consultant who also had managed health care experience. Both Kennedy and O'Donnell accepted employment with Alta and began work in May and June of 1987 respectively. Kennedy and O'Donnell contend that they accepted a reduced salary from Alta in reliance on Alta's promise of significant future stock bonuses and on Alta's representations regarding the value of its stock. Dep. of Carole Kennedy at 41–42, 50, & 67–69; Dep. of Peter O'Donnell at 34–35, 45, & 52. Neither Kennedy nor O'Donnell signed written employment contracts, but Alta sent both letters setting forth the terms of their respective employments, and both signed stock purchase agreements with Alta.[1]

Kennedy and O'Donnell assert that during their two years with Alta, they worked effectively and were instrumental in transforming Alta into a profitable managed health care company, but that two events led to their dissatisfaction and consequent termination of service. First, Kennedy and O'Donnell allege that the lure of a sizeable equity position in Alta convinced them to accept salaries which fell short of what they could obtain elsewhere in the industry.[2] Dep. of Carole Kennedy at 41–42; Dep. of Peter O'Donnell at 34–35. Kennedy and O'Donnell received a bonus of only 600 shares each after their first year of employment.[3] These bonuses were a source of dissatisfaction, because they fell far short of what Kennedy and O'Donnell

---

1. Under the stock purchase agreements, Alta had the option to repurchase Alta stock from its employees within 60 days after the date of the employee's termination. *Id.* at § 4.1(b), at 8. Alta was required to pay the fair market value for the stock when it exercised its repurchase option. *Id.* at 7. If no public market-existed for the stock, as was the case when Alta sought to exercise its repurchase option, fair market value would be ascertained by unanimous agreement of the directors' valuation committee. *Id.* at 4.1(h), at 16. The valuation committee consisted of three members: one member appointed by Terry Nofsinger, one member appointed by Rodman Moorhead, and one independent member. *Id.* at § 5.11, at 24.

2. In accepting employment with Alta, Kennedy allegedly refused salaries of $160,000 and $140,000 with other employers. She received a salary of $80,000 with Alta. O'Donnell allegedly left a consulting position in which he charged $900 to $1500 per day. He also received a salary of $80,000.

3. Kennedy alleges that she was promised yearly bonuses of substantial amounts of stock. Dep. of Carole Kennedy at 50. O'Donnell alleges that he was promised yearly bonuses of 10,000 additional shares. Dep. of Peter O'Donnell at 45.

expected. Their dissatisfaction was compounded in June 1988 when they learned, at the time of Alta's attempted public offering, that some of the original senior investors in Alta had a substantially greater equity stake in Alta than either Kennedy or O'Donnell, and that some of the senior managers' salaries, unlike those of Kennedy and O'Donnell, were not disproportionately low when compared with the then prevailing industry standard for executives in the health care industry.

Second, Kennedy and O'Donnell allege that Alta officials made repeated representations regarding the value of the stock both before and after they commenced their employment with Alta, and that these representations significantly overstated the value of the stock. Dep. of Carole Kennedy at 67; Dep. of Peter O'Donnell at 52. Kennedy and O'Donnell did not become aware that the representations overstated the value of the stock until Alta, at the time of its attempted public offering, filed its public offering statements.[4] Kennedy and O'Donnell terminated their employment with Alta in April and June of 1989, after which Alta sought to exercise its repurchase option as set forth in the stock purchase agreement. They allege that the price Alta offered for their stock was significantly below the value that had been represented to them and substantially below the value of the stock as internally appraised. Kennedy and O'Donnell refused the checks that Alta tendered to them.

In May 1990, Alta brought the present action seeking a declaration regarding the rights of the parties with respect to the stock purchase agreement. Kennedy and O'Donnell answered and counterclaimed alleging the following causes of action: (1) breach of employment agreement and promissory estoppel; (2) breach of the stock purchase agreement; (3) fraud; (4)

negligent misrepresentation; (5) violation of the Utah Uniform Securities Act; (6) violation of federal securities laws; and (7) breach of fiduciary duty.[5] Kennedy and O'Donnell joined as counterclaim defendants Alta's chief executive officer, Terry Nofsinger, and one of its directors, Rodman W. Moorhead, III.

After initial discovery, Kennedy and O'Donnell moved for summary judgment on Alta's claim. After a hearing, on January 15, 1992, the court denied the motion. Thereafter, Alta, with Nofsinger and Moorhead, brought the present motion seeking summary judgment on the following causes of action: (1) federal securities law; (2) state securities law; (3) fraud; (4) negligent misrepresentation; (5) breach of employment contract; and (6) breach of fiduciary duty. The claim for breach of the stock purchase agreement is not part of this motion. The court, having considered the matter, now grants the motion for summary judgment on the claims for violation of federal and state securities law and for breach of fiduciary duty and denies the motion on the claims for fraud, negligent misrepresentation, and breach of employment contract.

## II. SUMMARY JUDGMENT

Before setting forth the basis of its decision on each claim, the court notes its role in deciding a motion for summary judgment. "Rule 56 Fed.R.Civ.P. permits the entry of summary judgment on a claim when there is no genuine issue of material fact outstanding." *City Consumer Serv. Inc. v. Horne*, 578 F.Supp. 283, 288 (D.Utah 1984) (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). "As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt." *Id.* (citing *Norton*

---

4. After the attempted public offering in 1988, Alta offered a stock conversion plan under which managers could exchange original preferred stock for a new preferred stock that could thereafter be converted to common stock. Kennedy and O'Donnell allege that, despite their dissatisfaction, they exchanged their stock and continued employment with Alta, because of

representations made regarding the value of the converted stock.

5. Both Kennedy and O'Donnell brought identical causes of action: causes one through seven are Kennedy's, and causes eight through fourteen are O'Donnell's.

v. *Liddel,* 620 F.2d 1375, 1381 (10th Cir. 1980)). The trial judge, however, "must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made." *Id.* (citation omitted). "Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted." *Id.* (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Accordingly, if doubt arises regarding any factual issue, the court must resolve the doubt in favor of the non-movant, in this case Kennedy and O'Donnell, and deny the motion. Finally, "Rule 56, F.R.Civ.P., permits the entry of a partial summary judgment on a claim when there is no genuine question of material fact outstanding and

6. The federal and state claims are properly before the court. Alta's claim seeks declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988), basing jurisdiction on diversity, 28 U.S.C. § 1332 (1988). Kennedy and O'Donnell's counterclaim is compulsory in that it arises from the same transaction or occurrence as the original claim. Fed.R.Civ.P. 13(a). The court has federal question jurisdiction over Kennedy and O'Donnell's federal securities law claim, 28 U.S.C. § 1331 (1988), and diversity jurisdiction over their state law claims, *id.* at § 1332.

Apart from the question of subject matter jurisdiction is the question of controlling law on the common law claims. The claim for breach of fiduciary duty arises under the stock purchase agreement. The parties agree that disputes under the agreement are governed by Delaware law. Stock Purchase Agreement § 10.2, at 42. As to the remaining claims of fraud, negligent misrepresentation, and breach of employment agreement, a federal court exercising diversity jurisdiction applies the law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfr. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Applying Utah choice of law principles, Utah law governs the claims for fraud, negligent misrepresentation, and breach of employment claims, because Utah has the most significant relationship to these claims. *See Morris v. Sykes,* 624 P.2d 681, 683–84 (Utah 1981); *Overthrust Constr., Inc. v. Home Ins. Co.,* 676 F.Supp. 1086, 1087–88 (D.Utah 1987).

7. Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

the subject matter of the issue is wholly distinct and separate from other legal theories underlying the complaint." *Abbott v. Shaffer,* 564 F.Supp. 1200, 1205 (D.Utah 1983).[6]

## A. Violation of Federal Securities Law

■ Kennedy and O'Donnell claim that they are entitled to damages because Alta violated section 10(b) of the Securities Exchange Act of 1934[7] and Rule 10b–5[8] promulgated thereunder. Kennedy and O'Donnell allege that they purchased Alta stock in reliance on representations by Alta officials that the stock was worth $100 per share, and that they would receive a substantial amount of stock as part of their compensation.[9] Kennedy and O'Donnell

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b) (1988).

8. Rule 10b–5, 17 C.F.R. § 240.10b–5 (1991), provides:
It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person,
in connection with the purchase or sale of any security.

9. The sale or purchase of securities occurred at three different points during the relationship between the parties: (1) in 1987, when Kennedy and O'Donnell commenced employment with Alta; (2) in 1988, when Kennedy and O'Donnell exchanged their stock after the abortive attempt to publicly offer Alta stock; and (3) in 1989, when Alta sought to exercise its repurchase option.

Only the 1987 sale is subject to the Rule 10b–5 analysis. The parties have neither pled nor argued a Rule 10b–5 violation with respect to

further allege that Alta intentionally and materially misrepresented the price of the stock resulting in damages in an amount equal to the difference between the price Kennedy and O'Donnell paid for the stock and the stock's fair market value on the date of the transaction, plus the value of uncompensated services performed by Kennedy and O'Donnell on behalf of Alta. Kennedy and O'Donnell acknowledge that the fair market value of the stock on the date of transaction equalled what they paid for it. Therefore, their claimed damage consists of the value of their uncompensated services.

The court has previously set forth the elements of a Rule 10b–5 claim.

> The essential elements of a Section 10(b) or Rule 10b–5 claim for damages are: (1) damage to the plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with an intent to deceive, manipulate or defraud, (4) in connection with the purchase or sale of securities and (5) furthered by defendant's use of the mails or facilities of interstate commerce.

*Lochhead v. Alacano,* 697 F.Supp. 406, 414 n. 4 (D.Utah 1988) (citation omitted).

■ The court turns first to the damage element. The general rule of Rule 10b–5 damages, the out of pocket rule, measures damage by the difference between the price paid for the stock and the stock's fair market value on the date of the transaction. *Hickman v. Groesbeck,* 389 F.Supp. 769, 779 (D.Utah 1974). This rule

the stock exchange in 1988; therefore, the matter is not before the court for decision. Similarly, the 1989 share repurchase does not fit within Rule 10b–5. Rule 10b–5 requires reliance upon misrepresentations in connection with the purchase or sale of securities. *Lochhead v. Alacano,* 697 F.Supp. 406, 414 n. 4 (D.Utah 1988). Reliance was not present in the attempted 1989 transaction, because Kennedy and O'Donnell were required by the stock purchase agreement to sell the stock to Alta, if Alta exercised its repurchase option. Kennedy and O'Donnell's dissatisfaction with the price offered by Alta may fall within the other claims presented, but does not constitute a violation of Rule 10b–5. *See, e.g., Walsh v. International Precious Metal Corp.,* 510 F.Supp. 867, 872 (D.Utah 1981) (agreement which placed sole final say as to

has its source in 15 U.S.C. § 78bb(a) (1991), which requires actual damages for recovery under 10b–5.[10] Nonetheless, the court may fashion "a remedy to suit the particular case." *Hackbart v. Holmes,* 675 F.2d 1114, 1121 (10th Cir.1982). The particularized remedy, known as the benefit of the bargain rule, arises either as a consequential damage measure, *Grubb v. FDIC,* 868 F.2d 1151, 1165 (10th Cir.1989), or as a restitutionary measure. *Hackbart,* 675 F.2d at 1122. "The failure to show actual damages is a fatal defect in a Rule 10b–5 cause of action." *Feldman v. Pioneer Petroleum, Inc.,* 813 F.2d 296, 302 (10th Cir.) (citation omitted), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). Therefore, Alta's motion for summary judgment on this claim must be granted unless, as Kennedy and O'Donnell argue, the value of future services is a component of Rule 10b–5 damages.

■ The court, having found no case in which a claimant sought or received the value of future services as a component of damages under Rule 10b–5, declines to apply the benefit of the bargain rule to Kennedy and O'Donnell's Rule 10b–5 claim. Kennedy and O'Donnell cite *Hackbart* in support of their claim. *Hackbart,* however, does not control this issue. In *Hackbart,* the Tenth Circuit awarded the benefit of the bargain as a restitutionary measure to a business partner who held a non-equity position in a partnership. *Hackbart,* 675 F.2d at 1122. Under the partnership agreement, the non-equity partner would receive forty-nine percent of the business, but only

whether to buy, sell, or wait in one party's control may be a matter of state contract law, but is not a matter of federal securities law); *St. Louis Union Trust Co. v. Merrill, Lynch, Pierce, Fenner and Smith Inc.,* 562 F.2d 1040, 1051–52 (8th Cir.1977) (no reliance and, therefore, no rule 10b–5 cause of action where sale under repurchase agreement is mandatory).

**10.** Section 78bb(a) provides, in part:

[N]o person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of.

after his non-participating stock was converted to participating equity stock. *Id.* at 1116. The stock conversion would not occur until the non-equity partner had proven his business ability to the satisfaction of the board of directors. *Id.* After nearly six years in the partnership and before the stock conversion, the non-equity partner severed his relationship with the partnership. *Id.* at 1117. The court awarded the non-equity partner his equity interest in the partnership, reasoning that the plaintiff lacked the business knowledge requisite to understand the agreement, and that his six years of service substantially contributed to the increased value of the partnership.

For several reasons, however, *Hackbart* is distinguishable from the present matter. First, the agreement and the participants to the agreement differ significantly from those involved in *Hackbart.* The *Hackbart* non-equity partner, unlike Kennedy and O'Donnell, lacked the business knowledge necessary to understand the partnership agreement. *Id.* at 1121 n. 9. Additionally, in *Hackbart*, the written partnership agreement detailed how the non-equity ownership would achieve equity status and what his percentage of equity would be. *Id.* at 1116–17. The stock purchase agreement in this matter, however, offers none of this certainty. There was no agreement as to the maximum or minimum number of shares that Kennedy and O'Donnell could expect. The stock was offered on the basis of merit, and the parties did not have the option of taking cash in lieu of stock. Further, the two organizations differ. *Hackbart* involved a two-person partnership involved in the tire business. *Id.* at 1116. In such a venture, the link between the non-equity partner's six years of service and the growth in value of the partnership is easily and directly drawn. *Id.* at 1122. Such is not the case with Alta. Alta, at the time, was a complex organization with many employees. No doubt Kennedy and O'Donnell contributed to the transformation of Alta to a managed health care company, but the link between Kennedy and O'Donnell's work and the success of Alta is too attenuated to apply a restitutionary measure of damages as in *Hackbart.*

Having established no basis for damages, summary judgment on the federal securities claim is proper. The court is convinced that the record, when viewed in the light most favorable to Kennedy and O'Donnell, contains no issue of material fact with respect to damages, and that as a matter of law the claim for violation of federal securities law must be dismissed.

### B. Violation of State Securities Law

Kennedy and O'Donnell claim damages resulting from Alta's violation of the Utah Uniform Securities Act. Alta, however, argues that the claim is barred by Utah Code Ann. § 61–1–22(5) (1989). Section 22(5) provides:

> No person may sue under this section: (a) if the buyer or seller received a written offer, before suit and at a time when he owned the security, to refund the consideration paid together with interest at 12% per year from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within 30 days of its receipt.

Alta argues that its repurchase offer complied with the statutory requirements; therefore, Kennedy and O'Donnell have no cause of action under this provision. Kennedy and O'Donnell argue, however, that Alta's repurchase offer fell short of the twelve percent requirement, because it did not include the value of the services they provided Alta.[11] Accordingly, the court must decide whether consideration, as used in the statute, includes the value of future services.

The Uniform Securities Act does not define consideration. Therefore, because Utah courts have not addressed the issue, the court must look elsewhere in the Utah Code for guidance. The Utah Business Corporation Act, Utah Code Ann. § 16–10–

---

**11.** Kennedy and O'Donnell allege that they provided $230,202 and $245,070 respectively in un- compensated services.

18 (1991), enumerates the types of permissible stock consideration, and expressly indicates that future services are not proper consideration for the purchase of stock.[12] In reading section 16–10–18 with section 61–1–22(5), the court concludes that consideration under the Uniform Securities Act does not include the value of future services. Therefore, summary judgment on this claim must be granted, if Alta offered the money Kennedy and O'Donnell paid for their stock plus twelve percent per year.

Kennedy and O'Donnell each paid $50,030 for their original purchase of stock in 1987. After their respective terminations, two years later, Alta offered $78,406 to Kennedy and $70,679.25 to O'Donnell. Simple mathematics clarifies that Alta offered better than twelve per cent per year. Therefore, Alta's repurchase offer complied with the statute, and the claim for a violation of state securities statutes must be dismissed as a matter of law.

## C. Fraud

Alta seeks summary judgment on Kennedy and O'Donnell's claim for fraud. Kennedy and O'Donnell claim that they reasonably relied on material misrepresentations regarding the following: (1) that they could purchase stock on the same basis as the original senior managers; (2) that Alta would annually provide a substantial stock bonus to them; (3) that the fair market value of the stock on the date of their employment was $100 per share; (4) that their compensation would be commensurate with the senior managers of Alta; (5) that Nofsinger had the same restrictions on his stock as Kennedy; (6) that neither Nofsinger nor the other senior managers had written employment agreements; (7) that all the senior managers held the same amount of stock and had taken salary re-

ductions; and (8) that they would be able to liquidate their stock within two years. Alta argues that Kennedy and O'Donnell's claim fails as to each element of fraud.

"[A]llegations of fraud do not lend themselves readily to resolution by way of summary judgment." *Teledyne Ind., Inc. v. Eon Corp.*, 373 F.Supp. 191, 195 (S.D.N.Y. 1974) (citation omitted). Even so, "[s]ummary judgment is appropriate when conclusory allegations of fraud stand alone, unsupported by specific evidence pertinent to a claim of common law fraud." *Edelmann v. National Patent Dev. Corp.*, 656 F.Supp. 1073, 1077 (S.D.N.Y.1987) (citations omitted). Having undertaken a review of the record and of the applicable law, the court is persuaded that Kennedy and O'Donnell have presented evidence sufficient to resist summary judgment as to the fraud claim.

The Utah Supreme Court has set forth the elements of fraud as follows:

(1) That a representation was made;

(2) concerning a presently existing material fact;

(3) which was false;

(4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he [or she] had insufficient knowledge upon which to base such representation;

(5) for the purpose of inducing the other party to act upon it;

(6) that the other party, acting reasonably and in ignorance of its falsity;

(7) did in fact rely upon it;

(8) and was thereby induced to act;

(9) to his [or her] injury and damage.

*Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991) (quoting *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273, 274–75 (1952)).[13]

---

**12.** Utah Code Ann. § 16–10–18 (1989) provides as follows:

The consideration for the issuance of shares may be paid, in whole or in part, in money, in other property, tangible or intangible or in labor or services actually performed for the corporation. When payment of the consideration for which shares are to be issued shall have been received by the corporation, such

shares shall be deemed to be fully paid and nonassessable.

Neither promissory notes nor future services shall constitute payment or part payment, for shares of a corporation.

**13.** The parties have not briefed the elements of falsity, inducement, and damages; however, the court is satisfied that there are factual questions on these elements. The court will devote its

■ An essential element of fraud is intent. To satisfy this element, the plaintiff must show that the representations were known to be false or were made when the representor knew he had insufficient information. *Id.* However, in cases where a confidential relationship exists between the parties, "[t]he breach of duty by the dominant party ... may be regarded as constructive fraud." *Blodgett v. Martsch,* 590 P.2d 298, 302 (Utah 1978). In such a case, "[i]t is unnecessary for the plaintiff to show an intent to defraud." [14] *Id.* "There are a few relationships (such as parent-child, attorney-client, trustee-cestui) which the law presumes to be confidential." *Id.* As set forth in the court's discussion of the claim for breach of fiduciary duty, *infra,* under Delaware law, "a director is a trustee for an individual stockholder." [15] 3 William M. Fletcher, *Cyclopedia on the Law of Private Corporations* § 848, at 217 (perm. ed. rev. vol. 1986); *see also Hynson v. Drummond Coal Co.,* 601 A.2d 570, 575 (Del.Ch.1991) ("As with trust beneficiaries, so with corporate shareholders, the law that creates the relationship affords them a right to hold fiduciaries accountable."). Therefore, the directors of Alta had a confidential relationship with Kennedy and O'Donnell which relieves Kennedy and O'Donnell of the requirement of showing intent to defraud.

■ Alta next attacks the fraud claim on the ground that the alleged representations were not material. In support of its claim, Alta argues that its alleged representations to Kennedy and O'Donnell that their compensation would be commensurate with other senior managers were too vague and abstract to constitute material representations. Alta further asserts that the representations do not involve matters on which Kennedy and O'Donnell reasonably could have relied.

The Utah Court of Appeals recently set forth the standard for assessing the materiality of a misrepresentation: "Materiality seems to require that the victim to some extent must believe the pretense to be true, but the greater focus is the objective issue of whether the misrepresentation was instrumental" in the decision. *Utah v. LeFevre,* 825 P.2d 681, 687 (Utah Ct.App. 1992). [16] Phrased differently, the representation is material "if the victim believed the misrepresentation to be true, and included it as a factor in the decision-making process." *Id.* Kennedy and O'Donnell allegedly accepted below market salaries with Alta on the basis of alleged representations regarding the value of stock and their opportunity to increase their equity position with the firm. Under the standard for materiality, the alleged misrepresentations are neither vague nor abstract, but rather formed the basis of the bargain between the parties. Consequently, they are material.

■ Alta further argues that the alleged representations regarding the value of the stock were statements of opinion, rather than statements of presently existing fact. "[I]t is settled that a misrepresentation of present promissory intention is a misrepresentation of presently existing fact." *Galloway v. Afco Dev. Corp.,* 777 P.2d 506, 508 (Utah Ct.App.1989). Representations regarding the value of the stock at the time Kennedy and O'Donnell accepted employment with Alta "relate to [the stock] as it existed at the time of the representations, rather than to any promise" of future performance. *Id.* Alta cannot prevail on this point.

---

discussion to the remaining elements: (1) intent; (2) materiality; (3) presently existing fact; and (4) justifiable reliance.

**14.** Relieving the plaintiff of his obligation to show intent rests on the policy that:

A course of dealing between persons so situated is watched with extreme jealousy and solicitude, and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party.

*Blodgett,* 590 P.2d at 302 (quoting 37 Am.Jur.2d *Fraud and Deceit* § 15, at 38)).

**15.** Although Utah law governs the fraud claim, *supra* note 6, Delaware law defines the relationship between Alta and Kennedy and O'Donnell.

**16.** *LeFevre* is a criminal case. Nevertheless, the court finds that standard for materiality set forth in *LeFevre* applies in the civil context.

■ Finally, Alta contends that Kennedy and O'Donnell had no right to rely on the alleged representations, because they failed to make an independent investigation of the representations. "Reasonable reliance must be considered with reference to the facts of each case, and is usually a question for the jury to determine." *Conder v. A.L. Williams & Assoc.*, 739 P.2d 634, 638 (Utah Ct.App.1987) (citation omitted). "[A] plaintiff may justifiably rely on positive assertions of fact without independent investigation." *Id.* (citations omitted).

> It is only where, under the circumstances, the facts should make it apparent to one of his knowledge and intelligence, or he has discovered something which should serve as a warning that he is being deceived, that a plaintiff is required to make his own investigation.

*Id.* (citation omitted).

The record contains nothing that would have placed Kennedy and O'Donnell on notice of a problem sufficient to require independent investigation before relying on the alleged misrepresentations. Moreover, the court is troubled by the assertion that a party has no right to rely on the representations of another. Such an argument casts a dim light on the representor.

> It can hardly be maintained that the general moral level of business and other financial relationships would be enhanced by a rule of law which would allow a person to defend against a willful, deliberate fraud by stating, "You should not have trusted or believed me" or "Had you not been so gullible you would not have been [so] deceived."

*Berkeley Bank for Coops. v. Meibos*, 607 P.2d 798, 805 (Utah 1980) (quoting *Johnson v. Allen*, 108 Utah 148, 158 P.2d 134, 137 (1945). Accordingly, the motion for summary judgment on the fraud claim is denied. ·

### D. Negligent Misrepresentation

■ Kennedy and O'Donnell base their negligent misrepresentation claim on the same alleged representations discussed in the previous section, and Alta sets forth the same arguments in support of its motion on this claim. Because "[n]egligent misrepresentation is a form of fraud," the court will not discuss each element of the claim at length. *Atkinson v. IHC Hosp., Inc.*, 798 P.2d 733, 737 (Utah 1990) (citation omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991). The court's previous discussion with respect to justifiable reliance and materiality applies equally to this claim.

To prevail on this claim, Kennedy and O'Donnell must establish that

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by the justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.*

The critical distinction between fraud and negligent misrepresentation is the element of intent.

> The negligent representer [sic] need not be shown to have any intent to deceive the victim, and he generally does not demonstrably know that what he says is false. The law imposes on him the duty to reasonably assure the accuracy of what he represents, because of his superior position to obtain the needed knowledge and his pecuniary interest in the transaction.

*Galloway v. Afco Dev. Corp.*, 777 P.2d 506, 509 (Utah Ct.App.1989) (footnote omitted). Accordingly, Kennedy and O'Donnell must show that Alta and its representatives had a duty to assure the accuracy of their representations and that they breached this duty. The Utah Supreme Court has described this duty:

> If ... the information is given in the capacity of one in the business of supplying such information, that care and diligence should be exercised which is compatible with the particular business or profession involved. Those who deal

with such persons do so because of the advantages which they expect to derive from this special competence. The law, therefore, may well predicate on such a relationship, the duty of care to insure the accuracy and validity of the information.

*Christenson v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 305 (Utah 1983) (citation omitted).

Alta, Nofsinger, and Moorhead possessed both a superior position to obtain information regarding the representations made to Kennedy and O'Donnell and also a pecuniary interest in Alta. Therefore, they had a duty to insure the accuracy of their statements. The facts when fully developed may indicate that the representations were negligent rather than intentional or reckless, or that they were neither negligent nor intentional. These questions cannot be resolved in this motion. Accordingly, Alta's motion for summary judgment on the negligent misrepresentation claim is denied.

### E. Breach of Fiduciary Duty

Kennedy and O'Donnell allege that the directors of Alta breached a fiduciary duty to them by not offering to repurchase their stock at fair market value. Alta, in moving for summary judgment on this claim, first argues that, although its directors, in valuing the stock at the time of the repurchase attempt, owed a duty to its shareholders

collectively, the directors did not owe a duty to Kennedy and O'Donnell individually. Alta argues alternatively that even if it owed a fiduciary duty to Kennedy and O'Donnell, the duty was not breached, because it valued the stock in good faith reliance on an independent appraisal of the stock. To prevail on this claim, Kennedy and O'Donnell must show that the directors owed them a fiduciary duty, that the duty was breached, and that the breach of this duty resulted in damage. *St. Louis Union Trust Co. v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 562 F.2d 1040, 1055 (8th Cir.1977) (applying Delaware law), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).[17]

"Although directors generally do not occupy a fiduciary position with respect to stockholders in face to face dealings, Delaware law does create such a duty in special circumstances where advantage is taken of inside information by a corporate insider who deliberately misleads an ignorant stockholder." *Id.* at 1055 (citing *Kors v. Carey*, 158 A.2d 136, 143 (Del.Ch.1960); *Lank v. Steiner*, 224 A.2d 242, 245 (Del.Ch. 1966)).[18] Therefore, under Delaware law, directors who possess inside information regarding the value of stock owe a fiduciary duty when reacquiring outstanding corporate stock not only to the corporation and to the shareholders collectively,[19] but also to the minority shareholders from

---

**17.** This claim involves a dispute arising under the stock purchase agreement, which, under the terms of the agreement, is governed by Delaware law. Stock Purchase Agreement § 10.2, at 42.

**18.** The court recognizes that "[a]s to corporate directors and officers, the majority rule is that the duty is owed to the corporation itself and to the shareholders collectively." *Lochhead v. Alacano*, 662 F.Supp. 230, 232 (D.Utah 1987) (citing 3 William M. Fletcher, *Cyclopedia on the Law of Private Corporations* § 848, at 218 (perm. ed. rev. vol. 1986)). Further, "[i]t is clear ... that Utah adheres to the majority position that a director's duty runs only to the corporation." *Id.*

Delaware, however, adheres to the minority rule, under which "a director is a trustee for an individual stockholder." 3 William M. Fletcher, *Cyclopedia on the Law of Private Corporations* § 848, at 217 (perm. ed. rev. vol. 1986); *see also*

*Hynson v. Drummond Coal Co.*, 601 A.2d 570, 575 (Del.Ch.1991).

**19.** *Cf. Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 804 P.2d 359, 367 (1990). In *Daniels*, the Montana Supreme Court determined that a director of a close corporation had not breached his fiduciary duty in valuing stock for repurchase from a former employee. The trial court found that the director had breached his fiduciary duty to the former employee by various representations and omissions to the employee regarding the fair value of his stock. *Id.* 804 P.2d at 365. The Montana Supreme Court reversed, determining that the director's fiduciary duty extended to all shareholders, not just the former employee and that the director was obligated to repurchase the shares at the price most favorable to the corporation. *Id.* at 367.

whom the stock is being reacquired.[20] *Id.; see also,* Harry G. Henn & John R. Alexander, *Law of Corporations* § 173, at 436, § 240, at 652 (3d ed. 1983). Accordingly, as a matter of law, the directors of Alta owed a fiduciary duty to Kennedy and O'Donnell.

■■■ Alta next contends that even if the directors owed a fiduciary duty to Kennedy and O'Donnell, the duty was not breached, because, in valuing the stock, the directors relied in good faith on a valuation report prepared by an independent valuation firm. The court agrees that good faith is the proper standard to judge whether a director's conduct breached a fiduciary duty.[21] Further, because the duty involved valuing stock under the terms of the stock purchase agreement, the director's reliance on the independent valuation should be judged by its compliance with the stock purchase agreement.

■■■ Section 5.11 of the stock purchase agreement provides that the corporation shall maintain a valuation committee to determine the fair market value of the shares when the stock is not publicly traded. Stock Purchase Agreement § 5.11, at 24; § 4.1(h), at 16. The agreement provides that the valuation committee shall determine the value "if no public market exists for a Share the value thereof as of a *recent date.*" *Id.* § 4.1(h), at 16 (emphasis added). Accordingly, the directors had a good faith duty to ensure that Kennedy and O'Donnell were offered the fair market value based on a recent valuation.

Alta argues that the valuation committee arrived at the repurchase valuation based on an independent appraisal, which valued the stock in December 1988 at $3.00 per share. The directors accepted this valuation, despite other more recent valuations, valuing the stock at a higher price. Given the speculative nature of the stock and the growth of Alta during this period of time, a valuation made seven months prior to the repurchase attempt may not comport with the fiduciary duty of the directors, especially considering the more recent valuations. The court does not judge which of the available valuations is accurate, but, merely, finds that a factual question exists regarding the fair market value of the stock on the date of the attempted repurchase.

■■■ An essential element of breach of fiduciary duty is causation. "[T]he stockholder must rely on the misleading representation or omission in order to establish a cause of action for breach of fiduciary duty." *St. Louis Union Trust,* 562 F.2d at 1055. In *St. Louis Union Trust,* the estate of a former shareholder, which was required to sell his shares to the corporation under terms of a stock agreement, brought Rule 10b–5, fraud, and breach of fiduciary duty claims against the corporate directors on the grounds that the corporation exercised its repurchase option in furtherance of a scheme to enhance the price of the stock for public offering. *Id.* at 1044. The court reversed the trial court and dismissed all claims reasoning that what the shareholder did or did not know about the public offering was irrelevant to the shareholders decision to sell the stock, because he was contractually bound to sell

---

**20.** *See American Timber & Trading Co. v. Niedermeyer,* 276 Or. 1135, 558 P.2d 1211, 1219 (1976). The *Niedermeyer* court found that a transaction between a director and the corporation, in which the director concealed the true value of corporate property and established an arbitrary valuation, constituted "not only a breach of his fiduciary duty to the corporation, but also a fraud on ... minority stockholders." *Id.*

**21.** The Delaware statutory standard of care applicable to directors reads as follows:

A member of the board of directors, or a member of any committee designated by the board of directors, shall in the performance of his duties, be fully protected in relying in *good faith* upon the records of the corporation and upon such information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees, or committees of the board of directors, or by any other person as to matters the director reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the corporation.

Del.Code Ann. tit. 8, § 141(e) (1990) (emphasis added).

if the corporation exercised its option. *Id.* at 1049. Accordingly, the court found "no duty to disclose any information concerning the public offering, since such information was irrelevant to the plaintiff's investment decision." *Id.* at 1055 (footnote omitted).

The reasoning of *St. Louis Union Trust* applies to this claim. Kennedy and O'Donnell did not rely on fraudulent representations with respect to the repurchase offer. Even if Kennedy and O'Donnell had decided to terminate their employment in reliance on misrepresentations concerning the value of the stock and, thereby, expected to trigger the repurchase option, they would still have no claim, because the decision to exercise the option belonged to Alta, not Kennedy and O'Donnell. They were absolutely obligated by the stock purchase agreement to sell their shares to Alta, if Alta exercised its option. Kennedy and O'Donnell thus cannot establish causation. Accordingly, Alta's motion for summary judgment on the claim for breach of fiduciary duty is granted.[22]

### F. Breach of Employment Agreement

 Kennedy and O'Donnell had no written employment agreement.[23] They allege, however, that Alta breached an oral agreement under which Kennedy and O'Donnell would receive less than market rate compensation in return (1) for the right to purchase Alta stock on the same terms as the original investors; (2) for a bonus of additional stock annually; and (3) for fair market price for their stock if they terminated employment with Alta prior to Alta's public offering. Disposition of Alta's motion for summary judgment on this claim requires the court to resolve whether the three alleged terms were in fact terms of the agreement, and if so, whether these terms were breached.

Parties may be bound by oral terms of an employment contract. "If the parties actually intended such an agreement and the agreement is of such a nature that it is possible to operate as a contract term, a court will give effect to the parties' intentions by enforcing the agreement as an implied-in-fact contract provision." *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991) (footnote omitted). "The existence of such an agreement is a question of fact which turns on the objective manifestations of the parties' intent." *Id.* (footnote omitted). However, "if the evidence ... is such that no reasonable jury could conclude that the parties agreed" to the term, "it is appropriate for a court to decide the issue as a matter of law." *Id.* (footnote omitted). Accordingly, whether the alleged representations constitute terms of employment is a question of fact for determination by the trier of fact. Because the court finds that there remain disputed questions of fact concerning whether these representations were terms of the agreement and, if so, whether they were breached, summary judgment on the claim for breach of an employment agreement is denied.

### III. MOTION TO COMPEL

Alta moves the court to compel discovery on the grounds that Kennedy and O'Donnell refuse to respond to three interrogatories, numbers eighteen through twenty of Alta's Third Discovery Request. The dispute involves Alta's request for "[e]ach and every basis on which [Kennedy and O'Donnell] claim that [a statement of Alta or its agents] constitutes an admission."[24] Pl.

---

**22.** The court does not imply that Kennedy and O'Donnell's dissatisfaction with the repurchase offer is not cognizable, rather it rules that this dissatisfaction does not state a claim for breach of fiduciary duty.

**23.** Both Kennedy and O'Donnell received correspondence from Nofsinger setting forth salary, monetary bonus, and initial stock investment as the terms of employment, but which did not purport to be an integration of the parties'

agreement. App. of Test. and Ex. Cited in Def. Mem. Opp'n, Vol. II, Exs. 5 & 53.

**24.** Interrogatory 18 reads as follows:
 Describe each out of court statement attributable to Alta or its agents that you intend to offer into evidence at the trial of this matter through the testimony of Kennedy, and individually, with respect to each such statement, state the following:
 A. The identity of the individual that made the statement;

Third Set of Interrogs. Nos. 18–20. Kennedy and O'Donnell object to these interrogatories "because [they intrude] on the thought process of the defendants' attorneys and requires them to reveal their strategy ... [and] seeks privileged work product." Def. Objections to Pl. Third Set of Disc. Req. at 41–44.

Rule 26(b)(1) of the Federal Rules of Civil Procedure establishes the scope of discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... [and] appears reasonably calculated to lead to the discovery of admissible evidence." If one party refuses to respond to a discovery request, the other party may move for an order compelling discovery, pursuant to Rule 37(b). The presiding judge may order discovery if the grounds for refusal prove baseless, and shall award costs if the refusal is "without substantial justification." Fed.R.Civ.P. 37(a). In this manner, the federal court may ensure smooth, efficient discovery.

Kennedy and O'Donnell oppose this motion arguing that interrogatories eighteen through twenty seek undiscoverable attorney work product. Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." Underlying this prohibition is the policy articulated by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947):

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be relevant from irrelevant facts, prepare his legal theories and plan strategy without undue and needless interference.

*Id.* at 510–11, 67 S.Ct. at 393. "This protection is not limited to documents and tangible things that are protected under Fed.R.Civ.P. 26(b)(3)." *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 439 (D.Kan.1987).

▮▮▮ Wright and Miller note that "Rule 26(b)(3) must be read in harmony with [Rule] 33(b) ... which ... [allows] interrogatories ... involving opinions or contentions that relate to fact or the application of law to fact." [25] 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil § 2026, at 232 (1978) (footnotes omitted). "Interrogatories ... of this type do require the attorney to disclose, to some extent, his mental impressions, opinions, and conclusions, but he is entitled to keep confidential documents containing these matters that have been prepared for internal use." [26] *Id.* (footnotes

---

B. The content of the statement;
C. The date on which the statement was made;
D. The name, address, name of employer, work telephone number, and residence telephone number of each person who was present when the statement was made;
E. Each and every basis on which you claim that the statement constitutes an admission against Alta;
F. Each and every basis on which you claim that the statement is relevant to the subject matter of this lawsuit.

Interrogatory 19 is identical, but applies to "the testimony of O'Donnell" rather than Kennedy. Similarly, Interrogatory 20 substitutes "through the testimony of any witness other than Kennedy or O'Donnell."

**25.** Rule 33(b) reads, in part:

> An interrogatory otherwise proper is not necessarily objectionable because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such interrogatory need not be answered until after designated discovery has been completed or until a pretrial conference or other later time.

**26.** This discussion is drawn from the advisory committee's note to Rule 26(b)(3):

> Rules 33 and 36 have been revised in order to permit discovery calling for opinions, contentions, and admission relating not only to fact, but also to the application of law to fact. Under those rules, a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions. But documents or parts of documents are protected against discovery by this subdivision. Even though a party may ultimately have to disclose in re-

omitted). Generally, interrogatories requiring legal or factual conclusions or opinions are to be answered "when they would serve a substantial purpose in expediting the lawsuit, leading to evidence or narrowing the issues." *Luey v. Sterling Drug, Inc.*, 240 F.Supp. 632, 636 (W.D.Mich.1965).

██ Having established the scope of Rule 33 with respect to the mental impressions of attorneys, the court finds that although interrogatories eighteen through twenty seek legal or factual conclusions which constitute mental impressions of Kennedy and O'Donnell's attorneys, they are discoverable under Rule 33. The court further finds that answers to these interrogatories will expedite the litigation and lead to evidence or a narrowing of the issues. Accordingly, Alta's motion to compel discovery of interrogatories eighteen through twenty is granted. Finally, the court denies costs to either party, because the matters at issue in this motion are close legal questions, and there is no showing that either party has acted without substantial justification.

### IV. CONCLUSION

Alta's motion for partial summary judgment is denied in part and granted in part. The motion is denied on the claims for fraud, negligent misrepresentation, and breach of employment contract, because factual questions exist as to material issues of the respective claims. On the fraud and negligent misrepresentation claims the court finds issues of fact relating to the elements of intent, justifiable reliance, materiality, and presently existing facts. On the claim for breach of employment contract, the court finds factual questions regarding what the terms of employment were, and whether or not these terms were breached.

The motion for summary judgment is granted on the claims for violations of federal and state securities laws and breach of fiduciary duty. On the federal securities law claim, the court grants the motion on grounds that Kennedy and O'Donnell suf-

fered no damage, because future services are not a proper measure of Rule 10b–5 damages. Without damage, summary judgment is proper on the federal claim. On the state securities law claim, the court finds, as a matter of law, that future services are not permissible consideration for the purchase of stock and that Alta's offer to repurchase Kennedy's and O'Donnell's stock complied with the statute which requires reimbursement of the consideration paid plus twelve per cent per year. Consequently, Kennedy and O'Donnell have no cause of action for violation of state securities law. On the claim for breach of fiduciary duty, the court finds, as a matter of law, that the counterclaim defendants owed a fiduciary duty to Kennedy and O'Donnell. An essential element of the cause of action for breach of fiduciary duty, however, is causation. This element requires that the defendant's breach cause damage to the plaintiff. The record before the court reveals no causation, because Kennedy and O'Donnell did not rely on Alta's misrepresentations at the time of the repurchase attempt. Kennedy and O'Donnell were required by the repurchase agreement to resell their stock if Alta sought to repurchase. Accordingly, notwithstanding Alta's duty to Kennedy and O'Donnell, the court finds no causation. Consequently, the motion is granted with respect to the claim for breach of fiduciary duty.

The court grants the motion to compel discovery of interrogatories eighteen through twenty of Alta's Third Set of Interrogatories on grounds that although the interrogatories, to some extent, call for disclosure of the mental impressions of Kennedy's and O'Donnell's attorneys, these mental impressions are discoverable under Rule 33(b) of the Federal Rules of Civil Procedure. The court further finds that discovery of this information will substantially expedite this litigation and aid in the parties in framing the issues for trial. Finally, the court declines to award either

sponse to interrogatories or requests to admit, he is entitled to keep confidential documents containing such matters prepared for internal use.

party their costs, because neither party has acted without substantial justification.